Good morning, Your Honors. May it please the Court, I would like to reserve five minutes for rebuttal. Your Honors, the primary issue presented in this appeal is whether the complaint effectively pled the state action element of Appellant's federal due process claims. According to the District Court, Appellant failed to set forth sufficient facts establishing a plausible nexus between the Butler County Agricultural Society and the state to satisfy state action. We believe the District Court erred in failing to recognize that by its very nature, the Butler County Agricultural Society is a per se state actor. Appellants pled that the Butler County Agricultural Society is a county agricultural society formed and operated under Ohio law, namely Revised Code 1711 et sec. So if you're arguing it's a per se state actor, are you arguing that the nexus test is not the relevant test? Correct. If you accept the proposition that this is a state actor per se, the Butler County Agricultural Society is a state actor per se, then the nexus test is unnecessary. However, if we were to apply the nexus test, I think we could satisfy that test and any other test used to determine the status of a private actor as a state entity. Although in this case, we don't think this is a private entity. The reason we believe that is that BCAS, the Butler County Agricultural Society, is a political subdivision and by virtue of that fact it is a state actor. How does this court or any court in this circuit look and make that determination of whether an actor is a state actor or otherwise? According to this court, I believe in the Greater Heights Academy case, the policy of this court is to look at state law, state precedent, state statutes to make that determination. If we do that in this case, we learn that the Ohio Supreme Court has specifically ruled that county agricultural societies are political subdivisions. That's in the Greene County case. The Ohio Attorney General has issued an opinion that the board of directors of an agricultural society is subject to the open record laws of the state of Ohio. The Ohio legislature has specifically deemed the county agricultural societies as body corporates and politics and that's in the statute 1711.13. An Ohio appeals court in ruling on this matter has indicated that by virtue of its creation under 1711.01, this is a state supported entity sufficient to establish state action. That's in the, I'm having trouble with this case, the Wymyanus Low case out of the 5th District Court of Appeals. And I think most importantly, this court has specifically stated in the Ohio Manufacturers versus the City of Akron case, all of these cases are cited in our briefs, that political subdivisions are automatically encompassed within the term state for purposes of state action under the 14th Amendment. And that's precisely what we have here. Now, if it is not a per se state act and we believe there's ample grounds to establish that right on the face of the complaint, if we look at the nature, purpose, and operation of the Butler County Agricultural Society and apply the nexus test or the public function test or any other form of analysis used to determine whether or not a private entity is a public entity for purposes of Section 1983, we see that this fits easily and overwhelmingly into those categories. I say that because the BCAS, the Butler County Agricultural Society, was created pursuant to a state law for a specifically designated state purpose. As a matter of fact, when you look at the statute, you look at 1711.04 and 05, in order to become a formal agricultural society under the auspices of the state, you have to conduct a county fair to perform certain purposes that the legislature has deemed important. So this is a specific statute developed so that certain state goals can be accomplished. It's not an incorporation statute of general application. But doesn't the Agricultural Society have a lot of private aspects to it in terms of private individuals running the Agricultural Society and so forth? The Agricultural Society does have a private component in the sense that there are private individuals on the board, two of whom, however, have to be state employees. But if we look at the other indicia and the other aspects of how the Butler County Agricultural Society or any agricultural society is operated, you see it has indicia that are unique, really, to government actors, such as the power to issue and sell bonds, tax levies. They can appropriate property to get property. The county must purchase the insurance for the facilities. It's been deemed a body corporate and politic, unlike a general corporation is in a general corporation status. I noticed that you didn't mention the Dunn v. Brown County Agricultural Society case. How would you deal with that? I think that was an 1888 Ohio Supreme Court case involving similar items. Is that the case that deemed this an agricultural state purpose? I remember there was a very old case and I can't, you stumped me on that, I apologize. What about the possibility that maybe you're right about this, maybe the district court made a mistake, but that maybe also the complaint doesn't plausibly state a procedural or substantive due process claim? Well, Your Honor, you anticipated what my rebuttal was going to be about, so let's get to that. We believe we have effectively pled due process cases. There was, you got some process, so on the procedural side, as I see it, your main point is that one of these members was biased. You've just got this bare allegation that one member was biased. Well, we think that is enough in this instance to taint that body and to taint the decision, because that decision maker was intimately involved in various aspects of the case. What is it, one out of ten board members? Yes, but I think what we were unable to unearth because we couldn't go forward was that there was sufficient animus against the Mingus family that it pervaded the entire board. People were wearing sweatshirts and t-shirts that were hostile to the Mingus. Yes, but I mean, we're in a fact-based pleading world, and you're supposed to have plausible fact-based pleadings to get beyond to discovery. You don't just file it, make these bare allegations, and then get discovery. Well, no, I don't quibble with that position at all, Your Honor, but I think we have set forth sufficient facts to enable us to develop further the bias issue here by virtue of Mr. Mingus being on the board. But on top of that... You mean, is it majority vote on the board? I don't know how the majority voted. No, no, no. No, I don't know. No, I'm making the point. They make decisions through a majority vote, and if there are ten members and one is biased, how does that establish a procedural due process problem? Well, again, I don't know what took place in the voting and the deliberations there, if there were deliberations, but we do know that we're entitled to an unbiased decision maker, and it is plausible to believe that a person on that board could have sufficient sway to affect the others. But on top of the procedural due process issues, we think there are substantive due process issues in the sense that our clients had a right to be disciplined or not in accordance with state law. State law mandated that their discipline be mitigated in circumstances where there's no fault found on the part of the exhibitor, and in this case it was unequivocal. All the bodies who looked at this case determined and ruled and You can still have, and we have strict liability statutes all the time, and there's a reason for strict liability here because people consume the mead. Your Honor, I agree with the strict liability aspect of it, and I agree that even if we deem that this punishment on its face is rational, we still have the fact that the minguses were treated arbitrarily because, as I said, the state regulation that the Butler County Agricultural Society was supposedly or ostensibly enforcing says that, this is 901.19.19, we've cited this in the brief, the director or the sponsor imposing discipline shall mitigate the discipline in state circumstances under which that should happen. That never happened. That is a class of one. You're saying it never happened because two years is the maximum? No. What they did was they banned him when there was no basis to determine that there was any wrongdoing on the part of the mingus family. Maybe I'm not following your point. If your point is mitigation because of absence of fault, what's the proof that they didn't mitigate? The proof is that a two-year ban is the cap. That would be the only way to make this point. We have no quarrel with the fact that the minguses were required to forfeit the prize money and that they lost that award. It was a two-year ban, correct. Is two years the cap? Is that the longest they can ban someone from competing? The fact that they banned them at all is our duty to mitigate. How do you know they didn't want to ban him for four years? The fact that there was no fault is what gets you down to two. Your point is you can't have a ban at all if it's fault-free. That's your basic point? It's our position that the state law because the state would have an interest in a situation where there are potential victims out there. But punished by banning this person, you do not advance the state interest. Sure you do. If anyone competing needs to know that if they're not really, they don't make sure on a strict liability basis that there aren't these foreign products in the meat, they're subject to a ban. That's a good idea when the meat gets distributed, sold to individuals. I would agree with that proposition if there could be shown some fault on the part of the mingus, but there was none. Just like in the seal case, the case involving the student in school with the knife. The whole point of that case is there was no risk of a victim. Here there's a risk of a victim. Yes, maybe you did nothing wrong, but the fact is the animal will get eaten by somebody, and if it's got this foreign product, that person could get hurt. So the state has an interest in being very careful about that. I don't dispute that, but I don't believe that that goal is advanced. Just think of a slaughterhouse. You could have a rule that says we don't care what the reason is that you're selling meat that has these problems. We don't care if you were fault-free. You're in trouble. You're out of business. Even if this were a rational extension and application of that principle, nevertheless, that principle is vitiated in circumstances where you treat somebody arbitrarily. That goes back to the procedural point, I guess. Well, no. This is a substantive due process, and I think there's a case, Your Honor, if I might, and it's not in the brief, but I would like to add it to the Court's 33. I think I understand your point. Thank you, Your Honor. Morning, Your Honors. May it please the Court. Plaintiffs have made a single factual allegation concerning whether the Butler County Agricultural Society acted under color of state law in disciplining plaintiffs for violating the terms of a livestock exhibitor agreement. That allegation was that the Butler County Agricultural Society is formed and operated under revised Code Chapter 1711. In order to judge whether that single allegation is sufficient to satisfy the state action requirement, we have to look at what's actually in Chapter 1711. First, Chapter 1711 is not an organic statute. It does not create agricultural societies. The state does not create these things. Individuals do. The statute only sets up a framework that if 30 or more people that are residents of the county come together and form a society, they get certain money from the— Why does it make a difference who initiates it if there's state regulations describing what happens if they initiate it? Well, I think in some of the cases that we cited in our brief, especially the LeBron case, the court looks at whether the government actually set up the corporation in order to determine whether it is the government. And now we're talking about the argument that the Butler County Agricultural Society is the government rather than the nexus test. But I think it is important that the state government does not mandate that anyone set up these societies. It just allows individuals to do it. That's true of townships. You don't have to create townships. They just have a way to do it if you want to do it. If it's not created, of course it's not a government body. But if it is created, it is one. And it's also true of private for-profit corporations. The government sets up a framework where people can, or in that case one person can, incorporate an entity. But they don't have to. And when you create a for-profit company, you're not called a governmental body or having powers and duties of government as these are, though. That's right. But I would also, on that point, go back to LeBron, which says that state government proclamations as to whether or not an entity is the government are irrelevant to the question of whether it was a state actor. Well, maybe you're arguing that we should get to the nexus test. Why isn't there a nexus here that is satisfied? Well, if you go back to the nexus test, as I began to say, the only allegation is that the entity was formed under Section 1711. So some more things about that. 1711 does not reserve to the state or to the county the ability to appoint members of the society. Only two of the eight members of the Board of Directors of the corporation are designated by the state in the statute as to who they must be. But isn't the Agricultural Society acting as if it were a subdivision of the state in terms of running the county fair and doing the other things that it does? Tell me why it isn't. Well, if you look at the Greene County versus Liming case, which was cited by Livestock Exhibitions are wholly proprietary. It says that there's nothing inherently governmental about them and that any private organization, if they wanted to, could put on a Livestock Exhibition. And that's a good point because... What's the Ohio State Fair? What would you call that? Ohio State Fair. What I call the... Big. We call it big. Isn't that surely not just... I can't imagine someone thinks of that as just purely a private entity that runs it. Well, it's not that it... It has lots of private competitions. It has lots of private... I get the point that within it, proprietary things happen, but I don't know. With respect to the state fair, I believe that that is put on by the Ohio Exhibition Commission, which is an entity that's directly up in Columbus, and there's nothing in the... That's a little more governmental? I think so. Shouldn't that give us a little pause? We're going to have one set of rules for statewide county fairs and another set of rules for countywide fairs? Well, but the two entities are different. The Ohio Exhibition Commission, and I'll be honest, I haven't looked at that statute. But in nexus terms, doesn't it seem odd to treat them differently if you go into that way of thinking about it as opposed to exactly how state law and state regulations... Well, if you were to only look at what goes on at the Ohio State Fair or at a county fair, I think you could find that that is wholly proprietary. It's like going to King's Island. There are rides, there are concessions. But you get at the end... I assume that the person who wins a particular competition gets a certificate saying that they have won the Butler County Fair steer competition or whatever the thing is. So they think they're getting something from the county. Now, maybe you have a response to that, which could be like, so what? No, I wouldn't say that, Your Honor. But I think that under LeBron, none of this stuff can be informative as to whether or not an entity is the government. Okay. And if you go to... If you step away from that and go over to the nexus test under this court's decision in Lansing versus City of Memphis, you have to look not at the totality of what the entity does, but at the particular activity which is being challenged. And here, the specific activity is a livestock exhibition, and Greene County versus Liming said that that is entirely proprietary. Any private entity could do it. And in that particular case, it was a livestock competition, the Greene County case? Yes. Who ran it? Tell me how that organization worked. I don't have the case in front of me. Well, that was also a county agricultural society. So you're saying it's exactly the same? Well, except the issue in that case was whether the Greene County Agricultural Society was a political subdivision for purposes of Chapter 2744, which it said that it was. We argue that under LeBron, state pronouncements as to what something is are not relevant anyway. And number two, being... The term political subdivision as used in the immunity statute, Chapter 2744, has a very specific definition, and it doesn't mean necessarily that the entity is a state actor for purposes of federal law. Of course, the... So why should not something that is a political subdivision under Chapter 2744 be determined to be a state actor? What's the reasoning? Well, under LeBron, now that was a First Amendment case, not a Fourteenth Amendment case, but the test that was laid out by the court in LeBron, I think, is useful. It says, we hold that where, as here, the government creates a corporation by special law, here the government did not create a corporation. Number two, for the furtherance of government objectives, we do have that. There are certain parts of what the Butler County Agricultural Society does that is in furtherance of governmental objectives, but the third factor is the government that creates the corporation retains for itself permanent authority to appoint a majority of the directors of the corporation. Now, under Chapter 1711, the government has not reserved for itself the right to appoint directors, the majority of the directors. Again, it's only two out of eight that the government decides who they are, two out of eight or more. But Greene County is an Ohio Supreme Court case, right? That's right. And it says that that county agricultural societies, which is what we have here, are political subdivisions of the state. For purposes of the state immunity statute. Okay, but I don't understand as a matter of holding of the Ohio Supreme Court shouldn't be guiding to us as to what Ohio thinks the agricultural societies are. Now, we decide as a federal law matter is an entity a state actor, but if Ohio, the Ohio Supreme Court thinks that the agricultural societies are state actors, but political subdivisions, sorry, it would seem that it would be logical for us to conclude that it is a state actor. Well, again, I think that Greene County was deciding whether the political subdivision was, or whether the entity was a political subdivision for a very specific point in Ohio. Why should that result be different than the result here? Because why should we give the agricultural societies immunity if they're not state actors? Well, because the immunity that exists under state law is a statute that's very detailed laid out under what circumstances an entity that's been deemed a political subdivision can receive immunity. But under LeBron, when you decide whether or not an entity is the government, you need to look at those factors, those three factors that I just went over. It's just a different test, and the two really don't have anything to do with one another. One case that I found that a corporation that was chartered by Congress, this is different than what we have here. This is a case where Congress actually created an entity to serve the public. That entity is not part of the government because the government does not control Freddie Mac through its appointees. So, again, the fact that there's some relation to the form this corporation is not dispositive of the state action test. Are you familiar with this very old case, 1888 case, Dunn? Somewhat. That was a case that held that an agricultural society was not a public body. Now, the court in Greene County v. Liming mentioned that case, and they just sort of ignored it, but I don't think they overruled it. So, to the extent that that older case has a broader holding than Greene County v. Liming, which specifically held that only for purposes of the immunity statute, then I think it might be informative also to your decision. Is it your view that Greene County overruled the Dunn case? No, I don't believe they overruled it, if I remember correctly. So, do you agree that if Judge Dallat was wrong on this score that we should send it back? No. I believe that under the other arguments that we've made, that this case still should be dismissed based on the procedural due process and substantive due process analysis. So, why isn't it? I mean, you would agree that it violates procedural due process to have a biased decision maker. So, in the abstract, that's enough to get you below the pleading stage, and here there are 10 decision makers. One is alleged to be biased. Why isn't that enough to get you to the next round? Well, there are a couple of... And as to that one person, it's fact-based. I mean, that's not just a label. I mean, it seems like they have some facts that allow that inference. Right. They allege three things. Number one, that Mr. Vollmer took the sample from the animal. Number two, that he testified in the separate ODA disciplinary proceedings up in Columbus. And number three, that he has a niece who participated in the next year's, not 2011, but 2012 in the livestock exhibition. I've cited two cases in our brief that say that those sort of allegations of bias are not enough. In terms of pecuniary interest, it has to be direct. It can't be through your niece. It has to be a direct pecuniary interest where you stand to gain money based on your decision in the case. We don't have that here. What if it had been a child? I'm sorry? What if it had been his child, not a niece? Don't parents do a lot of insane things? More insane than when money's at stake? Like take their children's money. You know, that might be a closer case if the actual parent was going to take some of the money that the kid earned in raising them. No, it's not just taking the money. It's the pride in wanting your child to succeed. I think it could be closer if it was a parent. Although still, I think under the case that I've Now, as to the other two allegations of bias, you've got a case in this circuit that says unequivocally that bias must come from a source other than prior participation in the case. And here on the other two bases, the fact that he took the sample, the fact that he testified at the ODA, that is based on a prior participation in the case and it can't be the basis for an allegation. Isn't there an appearance of impropriety if you have the decision maker having been involved in acting sort of as an executive branch prosecutor and the decision maker having a family member benefiting in the long run because the ban occurred to ban this successful kid from participating in the next two years? When the decision maker's niece wins, doesn't she win? I'm not certain that it's alleged that she won, but if I'm wrong, I apologize for that. But my response to that would be that under the two cases, Hammond and Lafferty, pecuniary interest has to be direct and other bias cannot be based on... So my question was, isn't there an appearance of impropriety? And you have to say yes to that, don't you? Well... Wouldn't you feel that it wasn't a fair decision if you were the kid involved? I'm not sure that if one person out of 10 decision makers had some involvement... But can't that one person influence the other nine? And we're at the pleading stage, right? So we don't know any of the facts. I'm just asking as a normal person, there is an appearance of impropriety that is alleged. I would say a very slight, on the order of 10%, possible appearance of bias. But that's not enough according to the precedent of this court. And we have taken you way over your time so that your red light's been on for a while. Thank you very much. Your Honor, if I might address the last issue of the appearance of impropriety. Regardless of whether there is or is not a pecuniary interest at stake in this case, there is an appearance of impropriety for, I believe, a more compelling reason. And that is that Mr. Vollmer was more than just a member of the board. He was the collection agent. He's the one who supposedly, not supposedly, who did collect the specimen which was And so when the appeal was made by the Mingus' to challenge the decision and that determination, it was found that the protocols were not followed, that the Mingus family was effectively left out of the process in a way which was contrary to state protocol requirements. So that when the matter ended up before the board of directors for their decision as to what to do with this discipline, there is every reason to believe that this board is going to support its member who was the collection agent who was roundly criticized by the Department of Agriculture hearing officer. And I think that in and of itself is a questionable situation, as was the fact, and I don't believe this was put in a complaint, maybe it should have been, and was the fact that the Mingus' before the competition even began, asked Mr. Vollmer to excuse himself because of his relationship to the niece who did compete in that year's contest and other antagonisms. So there was a history there, but I think the fact that he was the collection agent which was roundly criticized by the hearing officer gave this an appearance of impropriety. Aside from, but in addition to the appearance of impropriety, I believe it goes to that class of one situation where perhaps a rational law, okay, we're going to ban everybody and anybody if banamine is found in the drug, but we're not going to mitigate it, which we must, because the statute says you shall do this, and I think whether or not this is a mitigation in conformity with that dictate, with that rule, which is not a discretionary rule, it's a mandate, you shall mitigate. Whether this was mitigation, I think, is something else reasonable people could argue about, but I think under the class of one analysis and rational basis test, I think we... Do you think the class of one line of cases really adds anything to the rational basis test? I think it does to this extent that if... I mean, if it's an irrational class of one, it's irrational, so it fails anyway, and if it's a rational class of one, you know, I just don't know what it does. Well, no, it may be... If they have singled this person out, which we believe they did, and treated him arbitrarily... Rationally or irrationally, that's the key. Well, I believe that the case I cited stands for the proposition that you can arbitrarily select somebody for unfair treatment. You're not going across a whole category of individuals. You're taking this individual, and you are denying him something that you wouldn't deny to other people, even people of the same class. So if somebody else had won the competition, and the cat was disqualified because of banamine, we don't know that they would have banned that person for life. They may have just taken away the prize. We don't have a problem with that. Our problem is the ban and its effect on the life of this individual, conceivably the livelihood of this family. I should know the answer to this, but the ban has been suspended, or the ban has run its course? It has now run its course. He was banned for two years. Okay, so you know my next question. Sure, what does it matter? Yeah. It matters because it was a stigma that attached to him, the young man, and to his family. And arguably, during that two-year ban, he was denied the opportunity to show steers, and there is a pecuniary aspect to that, a financial aspect. This is commerce. This is the lost winnings he could have gotten? It's twofold. It's lost winnings, the premium he might have won, but on top of that, in the agricultural community, I learned these fairs are very important because it promotes your brand, the quality of your farm, and it opens up a host of commercial opportunities. It does not simply show up in who has the prettiest steer. Does the record show how much he was going to get for winning first prize on his particular steer? Well, it's the amount of... I don't think we had an actual amount. I don't remember. It might have been $100, or it wasn't. I thought it was per pound. It has something to do with the weight of the steer. I'm just curious whether the record showed what it was. Was it $1,000 or $10,000? I don't know enough. It was nothing like that. I honestly don't recall. Thank you. Your red light is on, so we must... Yes, please, please. Counselor, you apparently are relying on the Greene case as one that we should follow. Yes. In controlling whether this was state action. Is that right? Well, in part, the Greene case. What is troubling to me is if we look at footnote three in the Greene case, where they discuss the Dunn case, and they appeared there to say that the Dunn case relied on interpretation of other statutes, not the statute involved in Greene 2744. Correct. So did Greene overrule Dunn? I believe what Greene did was make a contemporary ruling based on the notion of what constitutes a political subdivision now, which is 2744, which was not in existence back in 18-whatever it was. And 2744 has general application throughout the Ohio Code, because it is used in other contexts, too, to define what a political subdivision is in these various contexts. So I think 2744, for all intents and purposes, rules the day as to what is a political subdivision. But as I read the footnote, it did not expressly overrule Dunn. It pointed out that Dunn was decided on other statutes, an interpretation of other statutes. Accepting that is true. I believe at this point in time, 2744 is the accepted definition of what a political subdivision is in the state of Ohio, because it is used repeatedly as a reference point throughout the Code in different sections as to- That's just for immunity. No, we cite other aspects, other parts of the Code where they say political subdivision in this context means the same as it does in 2744. We have various examples of that. So we believe it's a term of general application. I think what's also significant is that 2744 was used as a political subdivision, I believe, for charter schools as well. But a charter school is determined to be a state actor for the very same basis that BCAS should be deemed a state actor. They both are started by private people, and they both have strong indicia and strong involvement with the purposes and the operation of government. Thank you. Thank you both for your argument. The case will be submitted with the clerk.